**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Kevin A. Belt, | Case No. 2:24-cv-00582-APG-DJA |
| Plaintiff, | |
| v. | **Order** |
| Andrew Rees - Crocs, Inc.; Rick Blackshaw - Hey Dude Shoes, | |
| Defendant. | |

Under 28 U.S.C. § 1915 Plaintiff is proceeding in this action *pro se* and has requested authority to proceed *in forma pauperis*. (ECF No. 1). Plaintiff also submitted a complaint. (ECF No. 1-1). Because the Court finds that Plaintiff's application is complete, it grants his application to proceed *in forma pauperis*. The Court also screens Plaintiff's complaint and dismisses his color discrimination and age discrimination claims without prejudice but allows his race and national origin discrimination and retaliation claims to proceed.

**I.     *In forma pauperis* application.**

Plaintiff filed the affidavit required by § 1915(a). (ECF No. 1). Plaintiff has shown an inability to prepay fees and costs or give security for them. Accordingly, the request to proceed *in forma pauperis* will be granted under 28 U.S.C. § 1915(a). The Court will now review Plaintiff's complaint.

**II.    Legal standard for screening.**

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend

the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Id.* at 678. Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law. *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002). Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states."  Generally speaking, diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

### III.  Discussion.

Plaintiff sues his employer, Defendant Hey Dude Shoes—which it appears from Plaintiff's complaint is owned by Defendant Crocs Inc.—for damages and injunctive relief.[1]  (ECF No. 1-1).  Plaintiff alleges: (1) race, national origin, and color discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a);[2] and (3) retaliation in violation of Title VII of the Civil Rights Act of 1964.  (*Id.*).  Plaintiff attaches a right to sue letter from the U.S. Equal Employment Opportunity Commission addressed to him and dated February 15, 2024.  (*Id.* at 34).

Plaintiff alleges that he began working for Hey Dude through a temporary employment agency on July 15, 2022.  (*Id.* at 3).  A month prior to Plaintiff beginning his employment, another temporary employee "was carried over into the Hey Dude Shoes company within a 2-

---

[1] Plaintiff does not differentiate which Defendants against whom he brings which claims.  However, it is unlikely that Plaintiff would know the intricacies of the parent-subsidiary relationship between Crocs and Hey Dude without discovery.  Because there are instances in which a parent company can be liable for the actions of it subsidiary, and because Plaintiff has alleged both companies' involvement in his claims, the Court finds that Plaintiff has sufficiently alleged his claims that pass screening against both Defendants for the purposes of screening.  *See Johnson v. United Services Automobile Association*, No. 2:22-cv-005320JCM-DJA, 2022 WL 2134492, at *2 (D. Nev. June 13, 2022). As discussed more fully below, Plaintiff also lists Andrew Rees and Rick Blackshaw—whom he associates with Crocs and Hey Dude, respectively—as Defendants.  However, he does not bring any claims against these individual Defendants and the Court dismisses them without prejudice.

[2] Plaintiff brings his age discrimination claim under Title VII, but the Court liberally construes his complaint as more appropriately bringing this claim under the Age Discrimination in Employment Act.

week time period." (*Id.*). Plaintiff's supervisor—"Fil"—told him that he could expect to begin his employment with Hey Dude in a similar timeframe. (*Id.*). But Plaintiff was not hired by Hey Dude until October 31, 2022. (*Id.*). Plaintiff asserts that this is an unusual length of time for temporary employees to wait to gain permanent employment and that he knows of another 63-year-old, African American employee—Leonard Byrd—who was not offered permanent employment for six months. (*Id.*).

After Plaintiff was hired full time, he asked Fil for the access code for his employee discount. (*Id.* at 4). While other employees received the code without issue, Fil never sent it to Plaintiff despite Plaintiff asking multiple times. (*Id.*). So, Plaintiff went to Human Resources for help. (*Id.*). When he arrived at the Human Resources department, Plaintiff waited at the window for help, but everyone behind the window ignored him for a long time. (*Id.*).

Plaintiff worked in the Inbound department until around June of 2023, when he alleges that the Shipping department acquired the "D2" facility in which he worked. (*Id.*). When that happened, Plaintiff asked the Shipping Manager—"Steve"—and the Inbound Manager—"Tasha"—to transfer to the Shipping department because Plaintiff had ten years of shipping experience. (*Id.* at 4-5). Plaintiff alleges that Tasha seemed offended and that Steve and Tasha gave him different instructions on where to report. (*Id.* at 5). Tasha ultimately allowed Plaintiff to remain in the Shipping department permanently. (*Id.*).

In June of 2023, Plaintiff applied for the "WE Shipping Lead" position and was told to inform management of his application. (*Id.*). However, he was never given Tasha's contact information (although he does not allege from whom he requested it). (*Id.*). So, Plaintiff proceeded to tell Fil and another supervisor, "Jessica," via text. (*Id.*). But Plaintiff alleges only Jessica responded. (*Id.*). Later, Jessica told Plaintiff that the WE Shipping Lead position had been filled. (*Id.*). Plaintiff asserts that he was never interviewed or considered despite his credentials. (*Id.*). Plaintiff alleges that Hey Dude tends to promote inexperienced "[y]oung, attractive, LGBTQ+, Hispanic, athletic, feminine men, and a large amount of women," but not "masculine" men. (*Id.*). And in July of 2023, a person who was in the same position as Plaintiff "who fit these characteristics" was promoted to the position even though that person had only

been with the company for about two months, bypassing Hey Dude's promotion policy. (*Id.* at 6).

Plaintiff emailed the CEO of Crocs—Defendant Andrew Rees—on August 1, 2023 with his concerns, asking for an investigation to be conducted by a person not affiliated with Hey Dude. (*Id.*). Johnnie Hayes, an employee with the Crocs Human Resources ("HR") department, responded on August 2, 2023, asking for more information. (*Id.*). Plaintiff replied on August 11, 2023 that he feared giving more information because of previous instances of retaliation, but identified two managers—Tasha and "Gabby"—who he believed to be involved with enabling the culture of discrimination. (*Id.*).

Plaintiff was reassigned to the Inbound department on August 22, 2023. (*Id.*). Tasha explained that this was because the Shipping department did not need as many operators. (*Id.*). Plaintiff asserts that this explanation was false because another operator was hired for the Shipping department shortly afterwards. (*Id.*). Plaintiff alleges that his reassignment was retaliation for his emails to corporate and that other employees confirmed that they had experienced similar reassignments if they were unliked by management. (*Id.* at 7).

After Plaintiff left the Shipping department, employees still in the Shipping department began being required to conduct physical labor that they had not been required to do before. (*Id.*). Before Plaintiff's complaints, this physical labor was typically done by "lumpers" specifically hired for this purpose. (*Id.*). Plaintiff alleges that "[i]t was not a coincidence that the employees within the Shipping department were majority senior in age, African American, and known to speak out against Hey Dude Shoes' behavior." (*Id.*). Plaintiff names three employees—Leonard Byrd, a-63-year old African American; Johnny Fink, a 53-year-old African American; and Lewis Perry, a 70-year-old African American—who were subjected to the new, physical labor requirements in retaliation for Plaintiff's complaints. (*Id.*).

Yvonne Funk, another employee with Crocs' HR department, emailed Plaintiff on August 25, 2023 stating that she and Senior HR Manager Joe Fleury were investigating Plaintiff's allegations. (*Id.*). In September of 2023, while the investigation was ongoing, Tasha was fired. (*Id.*). But, also while the investigation was ongoing, Plaintiff was sent back multiple times to the

D2 facility to perform physical labor. (*Id.*). On October 3, 2023, Plaintiff received an email from Molly Moats, legal counsel for Crocs, that the investigation had ended and the findings would remain classified. (*Id.*). Plaintiff alleges that, despite the investigation, he and other Shipping department employees remained subject to physical labor requirements. (*Id.*).

On November 13, 2023, Plaintiff emailed the Crocs representatives he had dealt with in his previous complaints, complaining of the retaliation he was experiencing. (*Id.*). The next day, Fil texted Plaintiff that he would be reassigned back to the D2 facility with the Shipping department permanently. (*Id.*). Another employee who Plaintiff had mentioned in his November 13, 2023 email—Michael Mathis—was also reassigned. (*Id.* at 8). Plaintiff alleges that the only person to respond to his November 13, 2023 email was Moats, who requested more information and told Plaintiff that all communications should go though her. (*Id.*). Plaintiff responded on December 11, 2023 with more information about the retaliation, naming the members of leadership involved including "Shipping Manager Corderrel, Shipping Supervisor Jorge, and the Human Resources Manager Christian." (*Id.*). On December 12, 2023, Moats requested more specific information from Plaintiff about his allegations of racism, discrimination, and retaliation, stating that she could not investigate without further details. (*Id.*). Plaintiff asserts that he refused to respond "as [he] took [Moats'] interaction and the other Crocs Inc. representatives noninteractions as the company trying to build a defense for Hey Dude Shoes actions." (*Id.*).

"Towards the end of 2023," the Shipping department dwindled to two employees, Byrd and Plaintiff. (*Id.* at 8-9). Plaintiff asserts that Hey Dude refused to hire additional personnel to replace the employees who had been terminated. (*Id.*). Around that time, Hey Dude also began the process of moving to a new facility. (*Id.* at 9). Plaintiff alleges that during the move, Hey Dude removed the vending and ice machines from the Shipping department prematurely. (*Id.*). Plaintiff complained to Senior Operations Manager "Cody" and HR Manager Christian, and was later removed to the new facility. (*Id.*).

When Hey Dude completed the move to the new facility in January of 2024, lumpers were again assigned to heavy labor and the Shipping department gained three new hires. (*Id.*). But Plaintiff asserts that equipment was being distributed in a discriminatory manner, with other

departments getting more equipment than the Shipping department. (*Id.*). On January 25, 2024, Safety Manager "Pat" and Shipping Supervisor "Jorge" approached Plaintiff and told him that he had driven through a "restricted area" and had almost hit another operator. (*Id.* at 9-10). Plaintiff asserts that other operators were also driving through this area and were not approached by Pat and Jorge and that he had not nearly hit another operator. (*Id.*).

Plaintiff alleges that Byrd became vocal about the discriminatory way in which equipment was issued. (*Id.*). Later, on February 5, 2024, even though the Shipping department had an unusual amount of orders to process, no lumpers were sent to help in retaliation for Byrd voicing his concerns. (*Id.*). On February 20, 2024, the Shipping department was directed to begin completing tasks typically handled by maintenance. (*Id.*).

On February 21, 2024, Plaintiff submitted a complaint to the EEOC and on February 23, 2024, Plaintiff received his right to sue letter. (*Id.*). Then, on March 12, 2024, Fil asked for two pieces of equipment to be returned to his department, which led Byrd to speak out again. (*Id.* at 11). In retaliation, three out of five equipment operators from the Shipping department were sent to work in Fil's department, including Byrd. (*Id.*). While working there, the Shipping department employees noticed that Inbound department employees were not sharing the workload, and so Byrd again spoke out. (*Id.*).

On March 12, 2024, Plaintiff asserts that Fil attempted to embarrass him by announcing that Plaintiff took his lunch too early on the radio, even though Plaintiff was taking his lunch at the correct time. (*Id.*). On March 13, 2024 the Shipping department decided to speak to HR Manager Christian as a group. (*Id.* at 11-12). Instead, Plaintiff was called into the office to speak to Shipping Manager "Corderrel" and Shipping Supervisor Jorge on his own. (*Id.*). Corderrel made excuses for Fil and, when Plaintiff asked Corderrel to give those explanations to the rest of the Shipping department, Corderrel said he already had, which was false. (*Id.*). Fil was terminated on March 15, 2024. (*Id.*).

On March 19, 2024, "Maria" in the HR department told Plaintiff that he could not park his equipment where he normally did. (*Id.* at 12-13). Plaintiff asserts that this was discriminatory because other employees parked there frequently and were never spoken to about it, although

1 Plaintiff does not allege if those employees were of a different protected class than him.  (*Id.*).
2 On March 20, 2024, Jorge and Corderrel called a meeting with the Shipping department, telling
3 the department to stop having "little meetings," which Plaintiff asserts is the company's way of
4 stopping the department from complaining about discrimination.  (*Id.*).

### A.     *Claims against Andrew Rees and Rick Blackshaw.*

Plaintiff lists Andrew Rees and Rick Blackshaw as Defendants, whom he associates with Crocs and Hey Dude, respectively.  However, other than asserting that Rees did not respond to an email, Plaintiff has alleged no claims against these Defendants individually.  The Court thus dismisses all claims against them without prejudice.

### B.     *Race, color, and national origin discrimination.*

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [his] ... race, color, [or] national origin."  42 U.S.C. § 2000e–2(a)(1).  To state a claim for discrimination, a plaintiff must allege he (1) belongs to a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably or that a discriminatory reason motivated the employer.  *See Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 690-91 (9th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Hicks v. C.P. Squires Elementary Sch.*, No. 2:19- cv-01665-GMN-BNW, 2021 WL 199716, at *2 (D. Nev. Jan. 20, 2021).  "Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African–American individual is discriminated against in favor of a light-colored African–American individual."  *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 981 (D. Ariz. 2017) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002)).  The EEOC defines color discrimination as "when a person is discriminated against based on the lightness, darkness, or other color characteristic of the person."  *Id.* (citing EEOC Compliance Manual § 15–III, What is "Color" Discrimination, 2006 WL 4673426, at *1 (June 1, 2006)).

Here, Plaintiff has alleged sufficient facts to make a prima facie case for race and national origin discrimination, but not color discrimination under Title VII. While not all of Plaintiff's allegations fulfill the elements for race and national origin discrimination, the following allegations do. Plaintiff alleges that he is an African American man.[3] (ECF No. 1-1 at 3). When he was hired temporarily by Hey Dude, he alleges that he was qualified for permanent employment, but that he and Byrd—another African American temporary worker—had to wait much longer than employees who were not African American. (*Id.*). Plaintiff also alleges that he was qualified for the WE Shipping Lead position, but that a person of a different ethnic and racial background was preferentially given the position despite having less experience than Plaintiff. (*Id* at 5-6). Plaintiff alleges that, while he was working in the Shipping department, which was majority African American, the company required Shipping employees to engage in physical labor that other "lumper" employees not in the Shipping department were typically required to do. (*Id.* at 7). But instead of giving the physical labor tasks to the lumpers, Defendants assigned them to the majority African American Shipping department employees. (*Id.*). Plaintiff also alleges that Defendants withheld equipment from the majority African American Shipping department in favor of other departments. (*Id.* at 9). Defendants also assigned maintenance tasks to the Shipping department, which tasks it did not assign to other departments. (*Id.* at 10).

On the other hand, Plaintiff has not alleged any facts that would constitute a prima facie case for color discrimination. Based on what Plaintiff alleged, the discrimination he faced was a result of his race—not the lightness or darkness of the color of his skin. Therefore, Plaintiff's color discrimination claim is dismissed without prejudice.

---

[3] Although Plaintiff does not directly allege this fact, his complaint references instances of discrimination levied against other African American men and Plaintiff includes himself in those groups. For example, Plaintiff alleges that he was not hired for permanent employment in the same amount of time as other employees. He explains that he learned of "other cases of discrimination *of the same regard* including Leonard Byrd, a 63 year old, African American, veteran, who mentioned that he was not offered permanent employment for about a 6 month period of time. There have been multiple occurrences of this behavior involving only certain individuals who *share similar traits* physically involving skin color, race, ethnicity, and age." (ECF No. 1-1 at 3) (emphasis added).

### C. Age discrimination.

The ADEA prohibits an employer from, among other things, discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). "To establish a *prima facie* case of discrimination, a plaintiff must allege ... that (1) she was at least forty years old; (2) she was performing her job satisfactorily; (3) [she was] discharged; and (4) either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Sheppard v. David Evans and Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (internal quotations omitted). "An inference of discrimination can be established...by showing that others not in [one's] protected class were treated more favorably." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207-1208 (9th Cir. 2008).

Plaintiff has not alleged a prima facie case of age discrimination under the Age Discrimination in Employment Act because he has not alleged his age. While Plaintiff references discrimination based on age and mentions the ages of his co-workers, he does not mention his own age and does not explain whether individuals who were given permanent employment or promoted were younger than him. The Court thus dismisses Plaintiff's age discrimination claim without prejudice.

### D. Retaliation.

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) he engaged in an activity protected under Title VII; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004). With respect to the first element, an employee has engaged in a protected act if he (1) has opposed any practice made an unlawful employment practice; or (2) has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e–3(a) (2006); *see also Thomas*, 379 F.3d at 811.

Plaintiff has alleged a prima facie case of retaliation. While not all of Plaintiff's allegations constitute a prima facie case of retaliation, the following allegations do. Plaintiff alleges that after he emailed Crocs' HR representative Johnnie Hayes on August 11, 2023 identifying Tasha and Gabby as acting in a discriminatory manner, Tasha reassigned Plaintiff to the Inbound department on August 22, 2023. (ECF No. 1-1 at 6-7). The Shipping department employees that Plaintiff left behind were then subject to physical labor requirements that they had not previously been expected to do. (*Id.*). Plaintiff was also subject to these requirements on his return to the Shipping department. (*Id.*). Plaintiff alleges that around the time he was emailing with Crocs' legal counsel Molly Moats—late in 2023—employees within the Shipping department were terminated and not replaced, vending and water equipment was prematurely removed, and equipment was unequally distributed amongst departments. (*Id*. at 7-9). Managers that Plaintiff had named in his emails to counsel also began to cite Plaintiff for violations that other employees were not cited for. (*Id.* at 9-10). In March of 2024, Maria spoke with Plaintiff about parking his equipment in the wrong location, but another employee who did the same was not addressed. (*Id.* at 12-13). Plaintiff's retaliation claim shall thus proceed.

**IT IS THEREFORE ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 1) is **granted.** Plaintiff shall not be required to pre-pay the filing fee. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor. This order granting leave to proceed *in forma pauperis* shall not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that Plaintiff's claims for race and national origin discrimination and retaliation shall proceed against Defendants Crocs Inc. and Hey Dude Shoes.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file Plaintiff's complaint (ECF No. 1-1) on the docket and issue summonses to: (1) Crocs Inc.; and (2) Hey

Dude Shoes.  The Clerk of Court is kindly directed to deliver the summonses and two copies of the complaint to the U.S. Marshals Service for service.[4]

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to send Plaintiff a copy of Form USM-285.[5]

**IT IS FURTHER ORDERED** that Plaintiff must complete a USM-285 form for each Defendant and provide an address where each Defendant can be served with process.  Once completed, Plaintiff must provide the completed USM-285 forms to the U.S. Marshals Service.  Plaintiff shall have until **May 6, 2024** to furnish the U.S. Marshals Service with the required form.

**IT IS FURTHER ORDERED** that upon receipt of the issued summonses, the USM-285 forms, and the copies of the operative complaint—and pursuant to Federal Rule of Civil Procedure 4(c)(3)—the U.S. Marshals Service shall attempt service upon the Defendants.

**IT IS FURTHER ORDERED** that, within twenty days after receiving from the U.S. Marshals Service a copy of the form USM-285 showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying whether the Defendants were served.  If Plaintiff wishes to have service again attempted on a Defendant, he must file a motion with the Court identifying the Defendant and specifying a more detailed name and/or address for that Defendant or whether some other manner of service should be attempted.

**IT IS FURTHER ORDERED** that Plaintiff shall have until **July 15, 2024** to accomplish service on Defendants under Federal Rule of Civil Procedure 4(m).

**IT IS FURTHER ORDERED** that from this point forward, Plaintiff shall serve upon the Defendants, or, if appearance has been entered by counsel, upon the attorney(s), a copy of every pleading, motion, or other document submitted for consideration by the Court.  Plaintiff shall include with the original papers submitted for filing a certificate stating the date that a true and

---

[4] Because Plaintiff is proceeding *in forma pauperis* under 28 U.S.C. § 1915, he is entitled to rely on the United States Marshal Service for service.  *See* Fed. R. Civ. P. 4(c)(3).

[5] The USM-285 form is also available at: https://www.usmarshals.gov/resources/forms/usm-285-us-marshals-process-receipt-and-return

correct copy of the document was mailed to Defendants or counsel for Defendants. The Court may disregard any paper received by a district judge or magistrate judge that has not been filed with the Clerk, and any paper received by a district judge, magistrate judge, or the Clerk that fails to include a certificate of service.

**IT IS FURTHER ORDERED** that Plaintiff's color discrimination and age discrimination claims and all claims against Andrew Rees and Rick Blackshaw are **dismissed without prejudice** for failure to state a claim upon which relief can be granted, with leave to amend. Plaintiff will have until **May 15, 2024** to file an amended complaint if the noted deficiencies can be corrected. If Plaintiff chooses to amend the complaint, Plaintiff is informed that the Court cannot refer to a prior pleading (i.e., the original complaint) to make the amended complaint complete. This is because, generally, an amended complaint supersedes the original complaint. Local Rule 15-1(a) requires that an amended complaint be complete without reference to any prior pleading. Once a plaintiff files an amended complaint, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

DATED: April 15, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE