**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KEVIN A. BELT, | Case No.: 2:24-cv-00582-APG-DJA |
| Plaintiff | **Order (1) Granting the Defendants' Motion for Summary Judgment and (2) Extending the Deadline to Move for Summary Judgment** |
| v. | |
| CROCS INC., et al., | [ECF No. 49] |
| Defendants | |

Kevin Belt sued Hey Dude, Inc. and its parent company Crocs Inc. for race discrimination, retaliation, and harassment arising from his employment with Hey Dude. Belt, a caucasian man, worked as a warehouse employee in Hey Dude's Las Vegas distribution facility. He brings two claims against each defendant: one under 42 U.S.C. § 2000e et seq. (Title VII) and the other under 42 U.S.C. § 1981. Under Title VII, Belt alleges race discrimination and retaliation. The defendants move for summary judgment on Belt's Title VII claims, which I grant. I also extend the deadline for any party to move for summary judgment on the § 1981 claims.

## I. BACKGROUND

### A. Belt's employment with Hey Dude.

Belt began working for Hey Dude in July 2022, first through a temp agency and then as a Hey Dude employee in October 2022. ECF No. 49-2 at 7-8, 80. He worked as an equipment operator at Hey Dude's Las Vegas facility, which initially consisted of two buildings, D1 and D2. *Id.* at 8-9, 80. Building D3 was added later, and the inbound department where Belt worked moved to that building from D2 in summer 2023. *Id.* at 9-10. When the inbound department

moved to D3, Belt requested, and was approved, to switch to the shipping department and continue working in D2. *Id.* at 10-12, 92, 98.

Belt applied for a promotion in June 2023. *Id.* at 13. He believed he was applying for a weekend shipping lead position, but he actually applied for a warehouse lead-weekend position, a role which would require overseeing various departments within the operations department. *Id.* at 14, 91, 98, 106-07; ECF No. 49-3 at 3. The "essential duties" of these positions "were consistent," but they had "different reporting structures, different managers and different responsibilities." ECF No. 49-3 at 3; *see also* ECF No. 49-2 at 104-05. The shipping department where Belt worked was not in the operations department, and Belt had never worked in the operations department. ECF No. 49-3 at 3. Hey Dude chose a caucasian woman, who was working as a shipping lead, to laterally move into the warehouse lead-weekend position. ECF No. 49-2 at 112.

In August 2023, Belt again moved departments, switching from the D2 facility to D1. *Id.* at 17-18. His supervisor stated the reason for the switch was because she wanted his energy in D1, there were enough workers in D2, and she wanted him to start training for a lead position. *Id.* In November 2023, Belt was sent back to work at D2. *Id.* at 18. His hours and pay did not change as a result of these transfers. *Id.* at 44.

In September 2024, Belt applied and was selected for a shipping lead position. *Id.* at 93, 99; ECF No. 49-5 at 3. Two months later, the defendants terminated Belt because an investigation revealed he had stolen a soda from an employee break room. ECF No. 49-3 at 3.

**B. Belt anonymously complains to Crocs' management.**

While still employed at Hey Dude, Belt sent several emails anonymously under the pseudonym Jon Smith. ECF Nos. 49-2 at 19-26; 55 at 37-41, 43-49. He sent the first of these

emails to Crocs' CEO on August 1, 2023. ECF No. 55 at 37. In that email, Belt hoped to "initiate change in the culture," complaining about a negative work environment and inequality within the company. *Id.* He expressed concern that if issues are raised with a supervisor, "you can pretty much count your employment as terminated." *Id.* Belt also complained about a "bias when it comes to the 'type' of people that are promoted," specifically identifying there was "little masculinity" within management. *Id.*

After a senior director of human resources followed up with "Jon Smith," Belt again anonymously complained on August 11, 2023 about retaliation and promotions that are not based on candidates' "ability or experience." *Id.* at 41. About two months later on November 13, 2023, Belt sent another anonymous email to Crocs human resources employees complaining of retaliation against workers in the D2 facility. *Id.* at 45-46.

Belt's final email as Jon Smith came on December 11, 2023, when he wrote to a member of Crocs' legal department again complaining about retaliation. *Id.* at 48. He also reported that there was "discrimination and racism" within the company. *Id.* None of the emails revealed Belt's identity. There is no evidence the defendants discovered who sent the emails until after they had fired Belt.

### C. Belt files a charge of discrimination with the EEOC.

Belt filed a charge of discrimination with the EEOC on February 21, 2024. ECF No. 49-2 at 141. The charge alleged that Hey Dude discriminated against him based on race when he "applied for a promotion to a warehouse shipping lead position (weekends)." *Id.* He also accused Hey Dude of retaliation for assigning him to another building in August 2023 after he notified management that "one of the reasons [he] was not selected for the position was [his] race." *Id.* The EEOC issued a notice of right to sue on February 15, 2024. *Id.* at 143.

3

**D. Belt filed the operative complaint after the defendants' motion for summary judgment.**

On May 29, 2025, Belt moved to amend his complaint. ECF No. 47. The defendants filed their summary judgment motion on July 8, 2025. ECF No. 49. The court granted Belt's motion to amend on September 24, 2025, and he filed his third amended complaint on October 6, 2025. ECF Nos. 53; 55. The third amended complaint is the operative complaint in this case, even though it was filed after the defendants had already moved for summary judgment. I will treat the summary judgment motion as if it addresses the third amended complaint.

## II.  ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

Belt's third amended complaint alleges two claims of Title VII violations for (1) race discrimination based on a failure to promote and (2) retaliation for informing management of a negative culture within Hey Dude. ECF No. 55 at 20-21.  He also alleges two claims under 42 U.S.C. § 1981, each based on 32 factual premises. *Id.* at 22-33.  Belt's second amended complaint did not allege § 1981 claims, so the defendants' summary judgment motion does not address those claims. *See* ECF Nos. 11; 49.  Thus, I will rule on only Belt's Title VII claims.  I express no view on his § 1981 claims, and I extend the deadline for any party to move for summary judgment on Belt's § 1981 claims because they were added after the dispositive motion deadline had expired. *See* ECF No. 42.

**A.  Belt's Title VII race discrimination claim fails.**

The defendants argue Belt cannot show race discrimination because a member of the same protected class as him, a caucasian woman, was selected for the position he applied for. Belt responds that it does not matter what lead position he applied for because he was qualified for any lead role, and he argues, for the first time, that the defendants did not promote him due to gender discrimination.

Title VII forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1).  At summary judgment, I apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008).  Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).  The evidence needed to establish a prima facie case "is minimal and does not even need to rise to the level of a preponderance of the

evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  A prima facie case creates the presumption that the defendant violated Title VII. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *Hawn*, 615 F.3d at 1155.  If the defendant meets this burden, the plaintiff must raise a triable issue of fact as to whether the given reasons are pretext. *Id.*

To establish a prima facie case of race discrimination under Title VII, Belt must offer proof: (1) that he belongs to a protected class under Title VII; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that the defendants treated Belt differently than a similarly situated employee who does not belong to the same protected class. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

Belt puts forth no evidence that the defendants treated him differently than a similarly situated employee not in his protected class.  Belt is caucasian and so is the woman who was chosen for the warehouse lead role he applied for. ECF No. 49-2 at 62, 112.

To the extent Belt argues he was discriminated against for the shipping lead role he did not apply for, his argument fails for several reasons.  Other than the allegations in his complaint, Belt offers no evidence that the person who received that role was not caucasian. *See* ECF No. 55 at 5 (alleging a hispanic man was given the shipping lead position).  But even assuming a non-white person received that promotion, his claim fails because he did not apply for the role. *McDonnell*, 411 U.S. at 802 (holding that in failure to hire cases, the plaintiff must show "that he applied and was qualified for a job for which the employer was seeking applicants").  Belt has not offered any legal basis for requiring the defendants to consider his application for a role he did not apply for.  And he has not offered any evidence that the defendants reviewed non-white

candidates' applications, realized those candidates likely meant to apply for—or were more qualified for—a different role, and transferred their applications for consideration of that more appropriate position.  Belt was encouraged to apply for other promotions and ultimately was promoted to a lead position. ECF Nos. 49-2 at 93, 99; 49-5 at 3; 55 at 36.  Even if the defendants told Belt the role he applied for was the shipping lead role, that would not create a dispute as to any material fact that Belt faced disparate treatment under Title VII. *See* ECF Nos. 49-2 at 98; 51 at 59.[1]  Belt has not shown that the defendants treated him differently than a similarly situated employee who does not belong to the same protected class. *Davis*, 520 F.3d at 1089-90.

Finally, Belt's contention that he was subject to gender discrimination does not avoid summary judgment on his race discrimination claim.  His third amended complaint alleges only race discrimination. ECF No. 55 at 20-21.  And Belt's EEOC charge of discrimination also complains only of race discrimination. ECF No. 49-2 at 141.  I therefore grant the defendants summary judgment on Belt's Title VII race discrimination claim.

**B.  Belt's retaliation claim fails for lack of a causal connection.**

The defendants argue Belt was transferred from D2 to D1 for nondiscriminatory reasons.  They contend that (1) Belt's emails do not constitute a protected activity until his final email mentions racism, (2) his transfer was not an adverse employment action, and (3) his emails remained anonymous so he cannot show causation.  Belt argues that his transfer proves he did not remain anonymous.

---

[1] The evidence Belt offers is a text he sent containing a double hearsay statement.  While I view the evidence in a light most favorable to Belt, it is not clear this evidence would be admissible. *See* Fed. R. Civ. P. 56(c)(2); *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (holding that evidence admissible in a trial may be considered in a summary judgment motion).

Title VII prohibits employers from discriminating against employees in retaliation for opposing "any practice made an unlawful employment practice by this subchapter" or for "charg[ing], testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To make out a prima facie retaliation case, a plaintiff must allege that (1) he "engaged in protected activity," (2) he "suffered a materially adverse action," and (3) "there was a causal relationship between the two." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013).  "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).  "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360.  The plaintiff "must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003), *opinion amended on denial of reh'g*, No. 00-35999, 2003 WL 21027351 (9th Cir. May 8, 2003).

Belt's Title VII retaliation claim fails because his emails were anonymous, so he cannot show a causal connection between his alleged protected activity and adverse action.  He argues that his forced transfer from D2 to D1 "prove[s] that [he] did not remain anonymous, even though [he] had sent [his] email anonymously." ECF No. 51 at 26.  This conclusory statement does not raise a genuine dispute.  Belt must offer some evidence that there was a connection between his emails and his transfer from D2 to D1.[2]  He has not offered any such evidence, and

---

[2] Whether Belt's anonymous emails before his transfer from D2 to D1 constitute a protected activity is doubtful.  Belt does not mention race discrimination in any emails before December

8

the evidence shows his identity remained anonymous when he sent the emails to Crocs' management. ECF Nos. 49-2 at 19-20, 23, 33; 49-4 at 3; 51 at 89.  He has presented no evidence that anyone—let alone the decisionmaker for his transfer—knew or suspected he was the sender. Belt concedes he is speculating that his transfer was due to retaliation. ECF No. 49-2 at 28-30, 38, 43.  I therefore grant the defendants summary judgment as to Belt's Title VII retaliation claim.

**III.  CONCLUSION**

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 49) is GRANTED**.  Plaintiff Kevin Belt's § 1981 claims remain.

I FURTHER ORDER that any party may move for summary judgment by April 10, 2026. If no party files a summary judgment motion by then, the proposed joint pretrial order will be due by May 8, 2026.

DATED this 12th day of March, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

---

2023, and when he did mention "racism," he conceded that he had "not even touched on" it before. ECF No. 55 at 48.

9